REVISED NOVEMBER 5, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-10808

KENNETH D. SANDSTAD,

Plaintiff-Appellant,

VERSUS

CB RICHARD ELLIS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas
October 28, 2002

Before DUHÉ, DEMOSS, and CLEMENT, Circuit Judges.

DUHÉ, Circuit Judge:


Plaintiff-Appellant Kenneth Sandstad appeals from the district court's order granting Defendant-Appellee C.B. Richard Ellis, Inc. summary judgment on Sandstad's Age Discrimination in Employment Act claim. Because Appellant has not produced evidence sufficient to create an issue for the jury as to pretext, we AFFIRM.

I. BACKGROUND

Sandstad ("Appellant") began his career with C.B. Richard Ellis ("Appellee" or the "Company"), a real estate services company, as sales manager of the Minneapolis office in 1974. Over the next 16 years he was promoted to Vice President and Resident Manager of the Minneapolis office, First Vice President and Resident Manager of the North Dallas office, and South Central Regional Manager of the Brokerage Business Unit.

The Brokerage Business Unit was organized in three divisions, and in 1990, Appellant became Central Division Manager. He reported directly to then President of Brokerage Services Gary Beban ("Beban") until the end of 1994, when his Division was eliminated and he became Senior Executive Vice President of Institutional Services. This was also an upper management position, and Appellant reported to Dick Clotfelter ("Clotfelter"). In late 1995, Clotfelter gave Appellant a poor performance review, questioning his management and noting his failure to focus on essential tasks. In 1996, Appellant returned to the Brokerage Business Unit as Eastern Division Manager, again reporting to Beban.

Beginning in 1996, the Company designed and implemented a Long-Term Leadership Orientation Program (the "Plan") to integrate younger employees into senior management. A 1997 memo issued by then CEO James Didion("Dideon") described the Plan as one to "identify 30 to 50 younger managers and management candidates to serve as a pool of talent for promotion to senior management over

2

the next 5+ years, ultimately replacing senior management."  Brett White, who eventually replaced Gary Beban as President of Brokerage Services and who terminated Appellant, was a participant of this program.

Appellee became a publicly traded company in late 1996. Appellee prepared question-and-answer literature for road shows held in anticipation of the public offering.[1]  The literature described the Company's plan to integrate younger employees into management.  During the road shows, stock analysts remarked to Company representatives that there was "too much grey hair" in senior management.  Among the representatives who heard these comments was Walter Stafford, senior manager and General Counsel for the Company.  Stafford told other senior managers about the remarks and stated that something would have to be done to remedy the analysts' perception.  Stafford was among the managers who later decided to fire Appellant.

In 1997, Beban moved from President of Brokerage Services to President of Corporate Services.  Appellant was in line to fill the vacancy left by Beban; however, CEO James Didioninstead selected Brett White, who was 37 years old at the time he was promoted. Beban told Appellant that Didionhad decided to "skip a generation" in selecting Beban's replacement.

---

[1] "road show. A series of presentations to investors describing an upcoming issue of securities.  A road show is designed to drum up interest in the issue among potential investors."  DAVID L. SCOTT, WALL STREET WORDS 326 (Revised ed. 1997)

In early 1998 the Brokerage Business Unit was reorganized from three divisions into nine regions. Appellant was assigned the lead management role in the South Central Region. Soon thereafter, two managers who reported directly to Appellant registered their frustration with Appellant's management. In July 1998, White, in his role as President of Brokerage Services, gave Appellant's management of the Dallas market a negative review. The next month, Nina Petty ("Petty"), a manager who reported directly to Appellant, filed a formal written complaint of gender discrimination against Appellant.

Appellee hired Rogge Dunn ("Dunn") as outside counsel to investigate Petty's complaint. Dunn interviewed Appellant, Petty, and other employees in Appellant's region, and compiled a report that included summaries of the interviews he conducted. Dunn reported that employees complained about Appellant's conduct and management style generally. His own impression of Appellant was that Appellant was a "bully," was condescending, and was not credible during his interview. Dunn concluded that while he thought Appellant had not discriminated against Petty, Appellant's actions with regard to Petty were nonetheless inappropriate and placed Appellee at substantial risk of a jury verdict.

Walter Stafford, after meeting with senior managers Ray Wirta and James Dideon, recommended Appellant's discharge to White. White conferred briefly with the Company's legal department and discharged Appellant shortly thereafter. White told Appellant that

4

the reasons were poor performance and lost confidence in his leadership. At the time, Appellant was age 52. The region under Appellant's direction was combined with a region managed by Jeff Langdon, age 42.

White issued a memorandum announcing the discharge to the employees in Appellant's region. The memorandum described the reason as lost confidence in Appellant's ability to perform following the investigation prompted by a gender discrimination complaint lodged against Appellant.

Appellant sued under the Age Discrimination in Employment Act and timely appealed the adverse grant of summary judgment.

II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. Pratt v. City of Houston, Tex., 247 F.3d 601, 605-06 (5th Cir. 2001). Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 323 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, we must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the

5

evidence. <u>Reeves v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). In so doing, we must disregard all evidence favorable to the moving party that the jury is not required to believe. <u>Reeves</u>, 120 S. Ct at 2110.

II. ANALYTICAL FRAMEWORK FOR ADEA CASES

In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both. <u>Russell v. McKinney Hospital Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000). If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 252-53, 109 S. Ct. 1775, 1792, 104 L.Ed.2d 268 (1989). If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed.2d 668 (1973) guides our inquiry.[2]

The <u>McDonnell Douglas</u> framework first requires satisfaction of the prima facie case, the elements of which, in the context of age discrimination, are: (1) the plaintiff was discharged; (2) he was qualified for the position at issue; (3) he was within the

---

[2] This circuit applies the <u>McDonnell Douglas</u> rubric to both Title VII and ADEA claims. <u>See Russell v. McKinney Hospital Venture</u>, 235 F.3d 219, 222 n.3 (5th Cir 2000).

protected class; and (4) he was replaced by someone younger or outside the protected group. <u>Brown v. CSC Logic, Inc.</u> 82 F.3d 651, 654 (5th Cir. 1996). Upon plaintiff's satisfaction of the prima facie case, the burden of production, rather than persuasion, shifts to the defendant to proffer a legitimate nondiscriminatory reason for its decision. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 255-56, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981). If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. <u>St. Mary's Honor Ctr v. Hicks</u>, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993).

The plaintiff may meet its ultimate burden with evidence tending to show that the reason offered by the defendant is a pretext for discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804, 93 S. Ct. at 1825. Evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. <u>Reeves</u>, 530 U.S. at 147-48, 120 S. Ct. at 2108-09. Thus, the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.[3]

---

[3] The district court quoted <u>Grizzle v. Travelers Health Network, Inc.</u>, 14 F.3d 261, 268 (5th Cir. 1994), for the proposition that

III. APPLICATION OF ANALYTICAL FRAMEWORK

Appellant urges that the district court erred in finding that he offered no direct evidence of Appellee's discriminatory motive in terminating him.  We agree with the district court.  Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption. Mooney v. Aramco Services Co., 54 F.3d 1207, 1217 (5th Cir. 1995). Appellant points to the Long Term Leadership Development Plan, which endeavored to "identify...younger managers...for promotion to senior management over the next 5+ years, ultimately replacing senior management." To find that the plan is evidence of age-based animus relevant to Appellant's termination requires the inference that senior managers were to be fired to make room for younger trainees, rather than being replaced as they retire, change jobs, or are terminated for performance reasons.[4]  Appellant contends that the district court erroneously failed to draw this inference in his favor.  However, Appellant's contention is inapposite to the

---

the plaintiff's burden of establishing pretext is "a heavy one indeed.  It is not discharged by general avowels of belief, however sincere, that age–rather than an established adequate reason–was the real reason for the termination."  Appellant protests that the language quoted by the district court indicates that it applied the "pretext-plus" standard rejected in Reeves.  Our holding does not rely on the notion of Appellant's burden being a heavy one.  In accordance with Reeves, we look only to whether a reasonable jury could find that Appellant's evidence supports an inference of age discrimination.

[4] Our discussion of the reasonableness of the required inference is reserved until we discuss whether Appellant has produced evidence allowing for the inference of pretext, *infra*.

analysis of whether evidence is direct or circumstantial. If an inference is required for the evidence to be probative as to Appellee's discriminatory animus in firing Appellant, the evidence is circumstantial, not direct.

Next, Appellant offers the remarks by stock analysts about "too much grey hair" in Company management. This evidence cannot demonstrate directly that Appellant was fired because of his age. The speakers not only had no part in the decision to terminate Appellant, they were not even employed by the Company. Gary Beban's "skipping a generation" comment similarly is not direct evidence. First, Beban was not responsible for Appellant's termination. Second, Beban in his deposition testimony indicated that he meant "generation" in the context of levels of management seniority, not age. The ambiguity of the remark, as well as its attenuation from Appellant's termination, excludes it from the realm of direct evidence.

Because Appellant's case consists of circumstantial evidence, we apply the McDonnell Douglas burden-shifting analysis. Appellee argues that Appellant failed to make out a prima facie case because Appellee restructured its divisions rather than replacing Appellant per se. The region formerly under Appellant's direction was collapsed into a region managed by 42-year-old Jeff Langdon. As did the district court, we will view, without deciding, Appellant's evidence as establishing a prima facie case. The burden then shifts to Appellee to produce a legitimate

9

nondiscriminatory reason for terminating Appellant.

Appellee's proffered reasons for terminating Appellant were his management style and the risk created by his conduct toward Nina Petty. Evidence in support of Appellant's explanation includes deposition testimony by the managers who fired Appellant or took part in the decision. Appellant contends that <u>Reeves</u> requires us to disregard as interested witness testimony all testimony by managers involved in the employment decision.[5] We disagree with Appellant's interpretation of <u>Reeves</u>, which would in effect eliminate his burden to show that Appellee's explanation is pretextual. The burden on Appellee to produce a legitimate nondiscriminatory reason for terminating Appellant is "one of production, not persuasion; it can involve no credibility assessment." <u>Reeves</u>, 530 U.S. at 142, 120 S. Ct. at 2106; <u>See also</u> <u>Rios v. Rossotti</u>, 252 F.3d 375 (5th Cir. 2001)(same); <u>Futrell v. J.I. Case</u>, 38 F.3d 342 (7th Cir. 1994)("[I]n indirect discrimination cases, we do not defer to jury verdicts where the credibility of a defendant's explanation of the discharge is at issue simply because juries have the exclusive right to judge

---

[5] "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.' *Id.,* at 300." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 151, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)(quoting Wright & Miller, Federal Practice and Procedure § 2529 (2d ed. 1995)).

10

credibility.") The definition of an interested witness cannot be so broad as to require us to disregard testimony from a company's agents regarding the company's reasons for discharging an employee. As the Seventh Circuit noted in <u>Traylor v. Brown, et al.</u>, 295 F.3d 783 (7th Cir. 2002), to so hold would foreclose the possibility of summary judgment for employers, who almost invariably must rely on testimony of their agents to explain why the disputed action was taken.

Moreover, the record reveals support other than the testimony of senior managers for Appellee's explanation. In Appellant's deposition and in a memo written by Appellant, he acknowledges calling Nina Petty in during her maternity leave to discuss removing her from a pure management role. Appellant admits that he regrets writing in a memo to Petty that she was regarded as a "mother hen." In a memo to Brett White, Appellant concedes that "the book" on him was that he micro-managed those who reported to him. The record contains memoranda expressing dissatisfaction with Appellant's management style from managers Ran Holman and Jerry Lumsden, both of whom reported to Appellant. The performance review of Appellant by Brett White, written the July before Appellant's September termination, expresses White's concern with the "instability and dissatisfaction" among the management in the Dallas market.

Also supporting Appellee's explanation are the summaries written by Rogge Dunn after he investigated Petty's complaint.

11

While the summaries could not be admitted for their truth, we consider them only for their effect on Appellee's decision. Appellant's assertion that we must assess the truth of the interview summaries to determine Appellee's reasonableness in relying on them does not create a fact issue as to pretext; Appellee is entitled to be unreasonable so long as it does not act with discriminatory animus. If Appellant intends to show that the explanation is so unreasonable that it must be pretextual, it is Appellant's burden to proffer evidence creating a fact issue regarding reasonableness. Appellant has not done so.

Given Appellee's nondiscriminatory explanation, Appellant must point to evidence creating an issue of fact as to the pretextual nature of the explanation. Merely disputing Appellee's assessment of his performance will not create an issue of fact. Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2002). The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination. Id. Thus, Appellant must adduce evidence supporting an inference that Appellee's motive was age-based animus, or at the least, that Appellee's explanation of its motive is false.

In arguing that Appellee's explanation is pretexutal, Appellant points to Rogge Dunn's conclusion that Appellant did not discriminate against Petty. However, Appellant fails to note Dunn's additional conclusion that Appellee nonetheless placed the Company at substantial risk of a jury verdict. That Appellant did

12

not discriminate against Petty is insufficient to create an issue of fact regarding whether Appellee fired him because he posed a risk to the Company.

Appellant argues that the oral statements we reject as direct evidence in any event provide evidence of discrimination sufficient to show pretext. Oral statements constitute evidence of discrimination if they indicate age-based animus and the speaker is principally responsible for the plaintiff's firing. Russell v. McKinney Hospital Venture, 235 F.3d 219 (5th Cir. 2001)(citing Reeves,530 U.S. at 151, 120 S. Ct. at 2110).[6]

The statements offered by Appellant fail in that the speakers were not responsible, primarily or otherwise, for his termination. The comment by Gary Beban that James Didionhad "skipped a generation" in choosing Beban's replacement could indicate age-based animus, and we draw that inference in favor of Appellant. However, Beban was not among the managers who made the decision to fire Appellant. Beban's estimation of Dideon's decision-making process in promoting Brett White bears no logical link to the decision to fire Appellant.

The remarks by stock analysts that the Company had "too much

---

[6] This court traditionally has applied the four-part test of Brown v. CSC Logic, Inc., 82 F.3d 651 (5th Cir. 1996), to workplace remarks. In Russell,a panel of this court chose not to apply the CSC Logic test, noting that its harsh application in Reeves was unacceptable to the Supreme Court. Russell, 235 F.3d at 225-26. Because the evidence offered by Appellant would produce the same result under either test, we do not reach whether the CSC Logic approach continues to be viable.

13

grey hair" in management indicate age-based animus.  However, the link between the speakers, who were not even Company employees, and Appellant's termination is absent.  To indicate a connection between the analysts' remarks and his termination, Appellant points out that Walter Stafford, one of the managers responsible for Appellant's firing, was audience to the comments and later expressed concern about them.  We have held that a remark may bear a sufficient causal connection to the employment decision if the speaker has such influence over the decision maker that his animus properly may be imputed to the decision maker. Russell, 235 F.3d at 226-27, citing Haas v. ADVO Sys., Inc., 168 F.3d 732, 734 n.1 (5th Cir. 1999).  These decisions are based in part on principles of agency.  Long v. Eastfield College, 88 F.3d 300, 306 (5th Cir. 1996).  We have not held that the remarks of non-employees may be imputed to the decision maker, and the statement at issue here provides no reason to so hold today.

Appellant's only evidence of discriminatory remarks by a decision maker is Stafford's testimony that White said to him, "You old guys don't always get it right."  Appellant omits from his argument the portion of the exchange which places it in context:

Q: Can you recall any [remarks] specifically?

A: The specifics, no. But, again, they're of the same type: "you old guys don't always get it right."

Q: He has said that?

A: Uh-huh.

14

Q: When did you hear him say that?

A: After I told him that, "You young guys seldom get it right."[7]

Viewed in context, White's remark provides no evidence of discriminatory animus.

The Plan likewise does not provide evidence of pretext. Favoring Appellant, we accept that the Plan evidences a policy of keeping older employees from advancing to senior management positions. However, the inference that the Plan reflected a policy to fire older managers to make room for younger managers is both unreasonable and contradicted by independent, uncontroverted evidence. Appellant offers the decline in mean age of senior managers as evidence of the Company's age-based animus. Since implementation of the Plan, two senior managers have been fired: Appellant and one other, whom Appellant concedes was not fired because of his age. The record shows that younger employees have been promoted to senior management positions. Thus, the decline in mean age is not attributable to senior managers being fired; it is attributable to younger employees moving into newly created senior management positions.

Even if we infer a general animus toward older people currently occupying senior management positions, Appellant offers no evidence providing for a reasonable inference connecting the Plan to his own termination. Appellant argues that the "grey hair"

---

[7] Deposition of Walter Stafford, 6R.Plaintiff's App.146.

and "generation skipping" comments tie the Plan to his termination. The Plan was in place before the road show; thus, it could not have been enacted in response to the "grey hair" comment. Appellant's argument that we should consider the Plan as being enacted in anticipation of the comments requires an unreasonable inference, which we are not required to make. Similarly, the "generation skipping" comment, spoken in connection with a promotion decision made by someone other than the speaker, can be linked to the Plan and to Appellant's termination only with unreasonable inferences.

We reject also Appellant's argument that he was treated differently from Jeff Langdon, whose management style had been the subject of complaints from subordinates. In discrimination cases, we compare the treatment of other employees whose conduct is "nearly identical" to the plaintiff's conduct and who were treated more favorably than the plaintiff. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507 (5th. Cir. 2001). Appellant cannot show that Langdon's conduct was nearly identical because no formal complaint of gender discrimination was filed against Langdon. Thus, as the district court concluded, Appellant's treatment cannot be compared with that of Langdon.

Finally, Appellant points to Appellee's alleged lax attitude toward sexual harassment and discrimination. Appellant's evidence of the Company's attitude is no more than a list of the employees who have made complaints and a judgment against the Company won by one complainant. The record contains no evidence of the substance

16

of the complaints or action taken by the Company that would be probative of the Company's attitude toward sex discrimination. No reasonable inference that the Company acted differently in its response to Appellant can be drawn from evidence in the record.

Viewing the evidence as a whole and drawing all reasonable inferences in Appellant's favor, we find that he has created no issue of material fact regarding the Appellee's discriminatory animus in terminating him. We therefore affirm the judgment of the district court.

AFFIRMED.