**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 16, 2009

No. 08-11196

Charles R. Fulbruge III
Clerk

EFRAIN CERVANTEZ

Plaintiff - Appellant

v.

KMGP SERVICES COMPANY INC.

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:07-CV-165

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Efrain Cervantez sued his former employer Defendant-Appellee KMGP Services Company Inc. ("KMGP"), alleging that it fired him because of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court granted summary judgment in favor of KMGP after concluding that Cervantez had failed to establish a genuine issue of material fact that would call into question KMGP's legitimate, nondiscriminatory reason for discharge — that his computer User ID

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and password had been used to access pornographic websites from one of KMGP's shared computers. Holding that the district court correctly determined that Cervantez had failed to establish a genuine issue of material fact, we affirm.

## I. FACTS AND PROCEEDINGS

Until he was fired in November 2006, Cervantez had worked as a field operator at KMGP's Scurry Area Canyon Reef Oil Companies ("SACROC") Unit oil field in Scurry County, Texas. Beginning in 1975, Cervantez worked for various owners and operators at the SACROC Unit, and he was hired by KMGP[1] in 2000 when it acquired the unit.

In June 2000, Cervantez attended a KMGP new-hire orientation during which he received the company's policy manual and Information Security User Policy ("ISUP").

The ISUP states in relevant part:

Violation of this policy may result in disciplinary action, including possible termination, and/or legal action.
. . . .
[I]ndecent, profane, obscene, intimidating, or unlawful material may not be sent or downloaded by any form of electronic means or displayed on or stored in the Company's computers or printed.
. . . .
System Users are responsible for safeguarding their passwords for each system. Individual passwords should not be printed, stored on-line, or given to others. System Users are responsible for all transactions made using their passwords.

Cervantez signed an acknowledgment of KMGP's ISUP, confirming that he "underst[ood] that failure to comply with this Policy may result in disciplinary action, which may include termination of [his] employment."

KMGP also maintains additional policies relating to its employees' computer usage. For example, the policy titled "The Workplace" informs employees that the "Internet and other communications systems are to be used

---

[1] KMGP is a subsidiary of Kinder Morgan, Inc.

for business purposes only. . . . Improper use of Companies' communication services and equipment may result in disciplinary action up to and including termination."

KMGP provides a shared computer in the SACROC Unit's break room which can be accessed by the unit's 200 employees. Brian Spence, a KMGP employee charged with ensuring that all SACROC Unit computers run properly, testified that in November 2006 he checked the break-room computer for possible viruses. Spence stated that he uncovered a large number of "cookies" indicating that Cervantez's User ID and password had been used to access pornographic websites. Spence testified that he did not know Cervantez.

Mary Ann Long, the former director of human resources for Kinder Morgan, Inc., then received notice that Cervantez's User ID and password had been used to access pornographic websites from a KMGP computer. According to Long, she instructed Bradley Lewis, the human resources representative with responsibility over a region that includes the SACROC Unit, to determine, *inter alia*, whether Cervantez had been at work on August 22 and 23, 2006, two dates on which his User ID was used to access hundreds of prohibited websites. Lewis claims that, as instructed, he confirmed that Cervantez worked on both dates. According to KMGP, Lewis recommended that Cervantez be terminated and Long agreed.

In late November 2006, Lewis advised Cervantez that he was being fired because his User ID and password had been used on August 22 and 23 to access pornographic websites, which Cervantez denies having visited. Lewis possessed a log detailing the websites allegedly visited, but, at that time, he prohibited Cervantez from seeing it.

KMGP replaced Cervantez with Paul Navarete, who was 43 years old and had been employed at KMGP for five to six months. Cervantez, who was then

57 years old, offered no initial indication that he believed he was discharged because of his age.

Cervantez applied for unemployment compensation from the Texas Workforce Commission ("TWC"). During the TWC proceedings, Cervantez had access for the first time to the log of websites allegedly visited with his User ID and password. According to Cervantez, in addition to showing access to inappropriate websites at times when he was at work on August 22 and 23, the log includes many entries for the evening of August 23, long after his shift had ended. As the initial log did not contain Cervantez's name or other identifying information, the TWC hearing officer requested the production of documents that would associate Cervantez's User ID and password with the log. KMGP thus produced a second, more comprehensive log that specifically identified Cervantez.[2] The second log showed attempts to access prohibited websites on many other dates, including dates when Cervantez did not work. Even though both logs contain information about times when Cervantez was not at work, they also list websites that were accessed when he was present.

In August 2007, Cervantez filed the instant suit in district court, alleging that KMGP had fired him because of his age in violation of the ADEA. In December 2008, the district court granted KMGP's motion for summary judgment. This appeal followed.

---

[2] Cervantez construes the record as establishing that Spence conceded that KMGP "manually," i.e., arbitrarily, added Cervantez's name to the list. In fact, the record confirms that Spence merely used the word "manually" in the context of instructing software to print the user's name, that of Cervantez, on the log.

## II. ANALYSIS

### A.     Standard of Review

We review *de novo* a district court's grant of summary judgment.[3] "Summary judgment is appropriate if the record, taken as a whole, 'show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"[4] "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."[5]

### B.     ADEA Framework

Under the ADEA, it is unlawful for an employer to discharge an employee "because of such individual's age."[6] To establish an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision."[7]

As Cervantez's ADEA claim is based on circumstantial evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* applies.[8] Under

---

[3] *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 227 (5th Cir. 2009) (per curiam).

[4] *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 740 (5th Cir. 2009) (per curiam) (quoting FED. R. CIV. P. 56(c)).

[5] *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (per curiam).

[6] 29 U.S.C. § 623(a).

[7] *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009). The Supreme Court's recent decision in *Gross* rejected the application of Title VII's "motivating factor" standard to ADEA mixed-motive cases. *See id.* at 2349–51. That holding has no affect on today's analysis because, on appeal, Cervantez did not advance a motivating-factor theory.

[8] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896–97 (5th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006) (per curiam) (referring to this circuit's burden-shifting standard for ADEA claims as "well-settled"). *But see Gross*, 129 S. Ct. at 2349 n.2 ("[T]he Court has not definitively decided whether the evidentiary framework of *McDonnell*

this standard, the employee must first establish a prima facie case of discrimination.[9] A prima facie case requires that the employee prove that he (1) belongs to the protected group of persons over the age of forty; (2) was qualified for his position; (3) was discharged; and (4) was replaced with someone younger or outside the protected group.[10]

The burden then shifts to the employer to produce evidence that the employee was discharged "for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment."[11] If the employer is able to meet this burden, "the *McDonnell Douglas* framework — with its presumptions and burdens — disappear[s], and the sole remaining issue [is] discrimination *vel non*."[12]

> [T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. And in attempting to satisfy this burden, the plaintiff — once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision — must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.[13]

---

*Douglas* . . . , utilized in Title VII cases is appropriate in the ADEA context.").

[9] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

[10] *Sandstad*, 309 F.3d at 897; *see* 29 U.S.C. § 631 (applying the ADEA only to individuals at least forty years old).

[11] *Reeves*, 530 U.S. at 142 (internal quotation marks and citation omitted); *see Sandstad*, 309 F.3d at 897.

[12] *Reeves*, 530 U.S. at 142–43 (internal quotation marks and citation omitted).

[13] *Id.* at 143 (internal quotation marks and citations omitted); *see Sandstad*, 309 F.3d at 897.

"The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiff's] termination."[14] Courts "'do not try . . . the validity of good faith beliefs as to an employee's competence. Motive is the issue.'"[15]

> [Yet,] [e]vidence demonstrating the falsity of the defendant's explanation . . . is likely to support an inference of discrimination even without further evidence of defendant's true motive. Thus, the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.[16]

## C.     Cervantez Failed to Establish a Genuine Issue of Material Fact

KMGP concedes that Cervantez has set forth a prima facie case under the *McDonnell Douglas* framework. We therefore begin our analysis by observing that KMGP's proffered reason for firing Cervantez — violation of its computer-use policy — constitutes a legitimate, nondiscriminatory reason for Cervantez's discharge.[17] The *McDonnell Douglas* burden-shifting thus evaporates, and we inquire whether Cervantez has shown the existence of a genuine issue of material fact on age discrimination. Cervantez asserts that the district court erred in three ways: (1) Its decision strayed from binding precedent by applying

---

[14] *Sandstad*, 309 F.3d at 899; *see Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[15] *Mayberry*, 55 F.3d at 1091 (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)); *see Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988) ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated. Even if the trier of fact chose to believe an employee's assessment of his performance rather than the employer's, that choice alone would not lead to a conclusion that the employer's version is a pretext for age discrimination." (citation omitted)).

[16] *Sandstad*, 309 F.3d at 897 (citing *Reeves*, 530 U.S. at 147–48).

[17] *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) ("[V]iolating a company policy is a legitimate, non-discriminatory rationale for terminating an employee.").

an erroneously high burden of proof; (2) it failed to recognize an issue of material fact among KMGP's alleged inconsistencies; and (3) it improperly discounted the significance of a KMGP manager's discriminatory comment. We reject each of Cervantez's points of error and determine, in our *de novo* review, that KMGP is entitled to summary judgment.

First, the district court applied the correct law. The Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.* makes clear that "'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'"[18] Cervantez is correct that *Reeves* rejected the higher standard of "pretext plus," which "require[d] a plaintiff not only to disprove an employer's proffered reasons for the discrimination but also to introduce additional evidence of discrimination."[19] Review of the district court's opinion and of the entire record makes clear, however, that the court's holding was a product of the law as it stands post-*Reeves*. For example the district court applied valid law in determining that Cervantez "has failed to come forward with summary judgment evidence to create a genuine issue of material fact that Defendant's 'stated grounds for his termination were unworthy of credence.'" (quoting our opinion in *Keelan v. Majesco Software, Inc.*).[20] In any event, we apply the correct standard in today's *de novo* review. Additionally, we emphasize — contrary to Cervantez's argument — that a fired

---

[18] *Ratliff v. City of Gainesville*, 256 F.3d 355, 361 & n.9 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 148).

[19] *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 574 & n.4 (5th Cir. 2004).

[20] 407 F.3d 332, 345 (5th Cir. 2005) (citing *Reeves*, 530 U.S. at 143).

employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith.[21]

Second, KMGP's purported inconsistencies, considered in toto, do not create a genuine issue of material fact. Briefly, (1) the mere existence of KMGP's second, more comprehensive log — which it produced for the TWC proceedings months *after* Cervantez's discharge — does not establish a disputed material fact regarding the truth or falsity of KMGP's stated ground for this firing; (2) it is not significant with whom Lewis confirmed Cervantez's presence at the SACROC Unit on August 22 or 23, or even whether Lewis confirmed it at all; (3) considering that Lewis told Cervantez that he was being discharged because his User ID and password had been used to access prohibited websites — the same reason KMGP advanced in the district court and on appeal — Lewis's statement that he thought Cervantez had accessed the prohibited websites personally is immaterial; and (4) it is not material whether Lewis actually made the final decision to fire Cervantez or Long made it based on Lewis's recommendation.

Third, the district court committed no error in disregarding a KMGP manager's allegedly discriminatory comment as a stray remark (if indeed, it was even discriminatory). According to Cervantez, in 2002 or 2003, his then-supervisor, Gary Norwood, told him that a member of KMGP's "top management," Pete Hagist, had said that KMGP would be expanding and "was going to start hiring young people." It is true that a discriminatory comment may be probative of discrimination "even where [it] is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision."[22]

---

[21] *See Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993).

[22] *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003) (per curiam) (citations and footnote omitted).

Yet, a comment is not evidence of discrimination if it is the sole proof of pretext,[23] or if it is not made in temporal proximity to the adverse employment decision.[24] There are at least three reasons why Hagist's alleged comment fails to defeat KMGP's motion for summary judgment: (1) The passage of three to four years between the comment and Cervantez's discharge is beyond the time frame relevant to his claim;[25] (2) no reasonable factfinder could determine that Hagist, who left KMGP eighteen months *before* Cervantez's discharge, was "in a position to influence the decision" to terminate him;[26] and (3) as the *only* evidence of pretext, Hagist's stray remark is not probative of discriminatory intent.[27]

## III. CONCLUSION

We affirm the district court's grant of summary judgment in favor of KMGP because Cervantez failed to demonstrate the presence of a disputed issue of material fact.

AFFIRMED.

---

[23] *Id.* at 577.

[24] *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261 (5th Cir. 2007).

[25] *See Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 344 (5th Cir. 2002) (rejecting comments made two or more years before a doctor's suspension); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 656 (5th Cir. 1996) (discounting a comment made sixteen months before an employee's discharge).

[26] *See Palasota*, 342 F.3d at 578.

[27] *See id.* at 577. It is even unclear whether the substance of the alleged remark supports Cervantez's claim. A plan to *expand* the SACROC Unit and to hire young people is not necessarily analogous to a plan to *replace* older people with younger personnel. Cervantez's theory nevertheless alleges discriminatory firing without mentioning discriminatory *expansionist* hiring.