# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 6, 2013

No. 12-40517

Lyle W. Cayce
Clerk

KRISTEL KATSEANES,

Plaintiff–Appellant

v.

TIME WARNER CABLE, INCORPORATED,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 7:10-CV-349

Before DeMOSS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Kristel Katseanes appeals from the district court's grant of judgment as a matter of law in favor of Defendant-Appellee Time Warner Cable, Inc., ("Time Warner") on her Age Discrimination in Employment Act ("ADEA") claim. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40517

## I. Facts and Procedural History

Katseanes worked as a "senior account executive" for Time Warner. In that position, she solicited local businesses to create and run commercials. Over time, she had developed a large number of clients, and she regularly generated the highest amount of sales among her peers.

Although Katseanes was individually successful for a time, her sales region fared poorly on Time Warner's performance metrics. In 2006, it hired Lance Morgan as General Manager, making him Katseanes's direct supervisor. He instituted a number of policies in an attempt to spur sales growth in the region. For example, he required account executives to sell advertising based on a "dynamic rate card," which forced them to quote clients uniform prices. He also capped the number of clients that account executives could protect from internal competition.

As Morgan acknowledged at trial, these changes disproportionately affected Katseanes. Even so, she successfully weathered the leadership transition. Morgan considered her an ally in winning over other account executives, and her 2006 sales were strong.

In 2007, however, the economy slowed, and Katseanes's sales numbers "dipped." Eventually, the proportion of her "booked" to "budgeted" sales[1] fell low enough to "trigger" a performance plan, even though she remained the top producer in her region when measured by a different standard: sales-by-dollars. Initially, Katseanes's plan called for limited additional sales-related activities and discussions with Morgan. She also received "budget relief," a reduction in her 2007 sales goal.

---

[1] "Booked-to-budgeted" sales refers to the percentage of actual versus projected sales. For example, if Katseanes's monthly goal was $100,000 and she brought in $95,000, her "booked-to-budgeted" percentage would be 95%.

No. 12-40517

The economy failed to improve, as did Katseanes's booked-to-budgeted percentage. In mid-2007, Marcie Farmer became Katseanes's direct supervisor. She soon issued Katseanes a written warning because her sales were averaging 80% of the amount budgeted in her 2007 goals agreement. Farmer ordered Katseanes to complete additional sales-related activities, such as making a set number of weekly "in-person cold calls," taking a supervisor on at least three monthly "client calls," and turning in daily activity reports. The warning provided that additional "disciplinary action, up to and including termination" would result if Katseanes failed to follow through. Katseanes conceded at trial that these actions were appropriate.

Katseanes's sales numbers improved before the end of 2007, and Farmer imposed no additional corrective measures. Even with budget relief, however, Katseanes failed to meet her annual sales goal, requiring her to stay on a performance plan. Farmer nonetheless rated Katseanes as "solid" in her 2007 review, below "outstanding" and "excellent" but above "needs improvement." She noted, however, that Katseanes's "customer focus" needed improvement.

Time Warner implemented a revised "Performance Management" policy for 2008. It provided that management could take "corrective action" against an employee when (1) an employee's booked-to-budgeted percentage fell between "80-94% for [two] consecutive months and/or when activity levels [were] insufficient to achieve future revenue goals"; (2) an employee's percentage was "not achieved at 80% for one quarter and/or activity levels [were] insufficient to achieve future revenue goals"; or (3) "at management's discretion for other behavioral or performance issues." The policy also contained a five-step "corrective action process" that started with counseling, followed by a verbal warning, a written warning, a "final" written warning, and termination. Managers could resort to any step depending on the circumstances; serial progressive discipline was not required.

No. 12-40517

Not long into 2008, South Texas Ford ("Ford"), one of Katseanes's largest clients, drastically cut its budgeted annual advertising expenditures. Katseanes lost about one-third of her projected 2008 sales, and her booked-to-budgeted percentage fell below 70%. She admitted at trial, however, that she would have remained on a performance plan despite the lost Ford business. Katseanes regularly met with Morgan and Farmer in early 2008 about her performance.

In April 2008, Morgan and Time Warner's regional Human Resources Director issued Katseanes a "final" written warning because she had "failed to maintain consistent activity levels," had "consistently underperformed," and was on track to miss her "second quarter budget" even excluding the Ford account. They emphasized that their concern stemmed from both Katseanes's "lack of activity" and her "failure to achieve budget." They ordered Katseanes to "consistently perform" several tasks, including weekly cold-calls, client visits, and "prospecting" trips. The warning made clear that Katseanes's "[failure] to achieve those activity levels [would be] unacceptable and an indication that [she was] unwilling to take direction to improve [her] business," and could result in "further disciplinary action up to and including termination."

Katseanes promised in a letter to Morgan that she would "follow all of the recommendations." As she conceded at trial, however, she failed to do so. Morgan testified that Katseanes's inaction led Time Warner to end her employment in July 2008. It is undisputed that, measured by dollars, Katseanes sold more advertising than any other account executive up to her termination.

Katseanes subsequently sued in state court, and Time Warner removed. At trial, she conceded, among other things, that she remained eligible for "corrective action" at all relevant times and that no one at Time Warner made age-related comments about her. Time Warner moved for judgment as a matter of law at the close of Katseanes's case, and the district court granted the motion. It concluded that Katseanes failed to make a prima facie showing of age

No. 12-40517

discrimination, that Time Warner's nondiscriminatory explanation was undisputed, and that Katseanes presented no legally sufficient evidence of pretext.

## II. Guiding Principles

Jury trials generally should proceed to verdicts. *McDaniel v. Terex USA, L.L.C.*, 466 F. App'x 365, 370 (5th Cir. 2012) (unpublished) (collecting cases). District courts, however, may grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a)(1). We review such rulings de novo. *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000). Judgment as a matter of law is inappropriate "unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001) (citation omitted).

In relevant part, the ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-78 (2009). That is, age must be "*the* 'reason'" that the employer decided to act." *Id.* at 176 (emphasis added) (citation omitted).

"If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). In circumstantial-evidence cases, we apply the well-known

5

No. 12-40517

burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which requires a plaintiff to first establish a prima facie case of age discrimination. *See* 309 F.3d at 896-97. To do so, the "'plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (citation omitted).

If the plaintiff satisfies this burden, the defendant must give a nondiscriminatory reason for its decision. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000). The burden then shifts back to the plaintiff to show the pretextual nature of the defendant's proffered reason. *Id.* Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citations omitted).

Katseanes's arguments on appeal depend on allegations of "stray remarks" and disparate treatment. "[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (alterations in original) (citation omitted).[2] To

---

[2] Our precedent is unclear whether the four-part stray-remarks test used in *Rubinstein* and *Jackson* applies to both direct- and circumstantial-evidence cases. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441-42 & n.5 (5th Cir. 2012). *Reed* suggests that, in circumstantial-evidence cases, *Reeves* requires a two-part test that looks to whether a comment shows "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* at 441 (citations omitted). *Jackson*, however, explains that "this circuit's

show disparate treatment, a plaintiff must demonstrate that her employer treated another employee differently "under nearly identical circumstances," i.e., "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. K.C. S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted).

### III. The District Court's Evidentiary Rulings

Katseanes argues that the district court abused its discretion in excluding a set of allegedly ageist remarks made by Farmer, as well as an exhibit showing the 2009 monthly booked-to-budgeted percentages for Sally Peña, Katseanes's exemplar for disparate-treatment analysis.

Katseanes claimed in her deposition that Farmer expressed an interest in hiring "younger workers" on at least two occasions. Katseanes did not recall when or in what context the comments were made, except that the first time was ten to twelve months before her termination. She admitted that Farmer neither referenced older workers in conjunction with those comments nor made age-related comments specifically to or about Katseanes. The district court excluded the testimony based on cases that construed similar language as insufficient evidence of discrimination. *See Cervantez v. KMGP Servs. Co.*, 349 F. App'x 4, 10-11 (5th Cir. 2009) (unpublished) (Employer "was going to start hiring young people."); *Berquist v. Wa. Mut. Bank*, 500 F.3d 344, 352 (5th Cir. 2007) (Supervisor said: "Performance issues will be promptly and aggressively dealt with. We will build leaders internally and attract younger talent.").

---

stray remarks doctrine survived" *Reeves*, relying on circuit precedent issued shortly after that decision. 602 F.3d at 380 n.27 (citing, *inter alia*, *Rubinstein*, 218 F.3d 392).

We need not resolve this debate here. Even under a two-step analysis, the stray remarks at issue do not evince discriminatory animus, and Morgan, the person responsible for employment decisions, independently agreed that Katseanes should be fired.

No. 12-40517

The district court acted within its discretion as to both rulings. By referencing only "younger workers," Farmer's comments have no nexus to the ADEA's protected class. Katseanes's deposition testimony, moreover, failed to establish that the comments were "proximate in time" or "related to" her termination. *Jackson*, 602 F.3d at 380. Similarly, although the excluded exhibit showed that Peña qualified for a performance plan in 2009, Katseanes must show that Peña complied with the strictures of her performance plan in order to show disparate treatment. The exhibit does not speak to that issue.[3]

## IV. Katseanes Lacks Legally Sufficient Proof of Age Discrimination

Katseanes did not offer competent evidence at trial sufficient to establish that Time Warner replaced her with someone younger. Thus, to make a prima facie case, the evidence had to show that Time Warner "otherwise" discriminated against her "because of" her age. To that end, Katseanes points to Time Warner's allegedly disparate treatment of her vis-à-vis Peña and to additional allegedly ageist comments made by Farmer.

Peña shared responsibility for the Ford account, and her booked-to-budgeted numbers in 2008 were low enough to trigger "corrective action." She remains at Time Warner, and, indeed, has been promoted. But Peña was not similarly situated to Katseanes. Morgan testified that Peña completed the tasks required by her performance plan. Katseanes admitted that she did not, and she presented no evidence contradicting Morgan. The record also shows that Peña far outperformed Katseanes on a booked-to-budgeted basis in 2007. Katseanes was on a performance plan for most of 2007 and met budget only one month that year. She therefore fails to show that Time Warner treated Peña differently under nearly identical circumstances.

---

[3] The exhibit also lists account executives within the ADEA's protected class who had booked-to-budgeted numbers similar to Katseanes, were put on performance plans, and nonetheless remained with Time Warner in 2009.

Katseanes also relies on a set of alleged comments made by Farmer to Rebecca Venegas, a former account executive. We have held that stray remarks "standing alone" are insufficient to create fact disputes. *Jackson*, 602 F.3d at 380. Regardless, the comments attributed to Farmer are too vague and remote to qualify as legally sufficient evidence of age discrimination. Venegas testified that Farmer once remarked after a phone call with Katseanes that she was "going to clean house," a comment that does not evince age-related animus. Another time, Farmer allegedly said that she wanted to "get rid of the older" account executives, but Venegas did not know whether this referred to age or tenure. Both comments were made some time before Katseanes was fired, and Venegas disclaimed that Farmer said she wanted to "get rid" of Katseanes specifically. Under our "stray remarks" case law, this testimony did not provide a legally sufficient basis for sending the case to the jury. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997).

Accordingly, Katseanes did not show that Time Warner "otherwise" discriminated against her "because of" her age, and thereby failed to present a prima facie case of discrimination. The record, in any case, overwhelmingly supports Time Warner's performance-related explanation, and Katseanes failed to raise a fact issue regarding pretext because she has no evidence other than "stray remarks." As such, the district court appropriately granted judgment as a matter of law for Time Warner.[4]

---

[4] Several of Katseanes's arguments on appeal have virtually no support in the record. For example, she claims that Time Warner allegedly hired two younger workers shortly before her termination who later took over some of her accounts. Those workers, however, were not mentioned at trial. Indeed, Katseanes testified at her deposition that she did not know what information they might have that would be relevant to her case.

Katseanes also contends that her final warning was "highly unusual" because Time Warner jumped "straight to the final stage" of its "progressive disciplinary procedures." That assertion is squarely at odds with the record, which catalogues numerous performance-related meetings between Katseanes and her supervisors from early 2007 until her termination. Katseanes also testified that the only "corrective action" steps not used against her as of

No. 12-40517

## Conclusion

Because Katseanes failed to present legally sufficient evidence of age discrimination at trial, we AFFIRM the district court's grant of judgment as a matter of law in Time Warner's favor.

---

January 2008 were a "final warning" and termination.  This is not a case where an employer suspiciously has terminated an employee with scant notice for violating unknown expectations or policies.  *Cf. Laxton*, 333 F.3d at 581 (employer provided little notice of alleged violations of company policy and issued a "final" written warning one day before employee was fired).