# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2023

Lyle W. Cayce
Clerk

No. 22-10133

Lisa Holmes,

*Plaintiff—Appellant*,

*versus*

Thomson Reuters (Tax and Accounting) Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-993

Before King, Jones, and Duncan, *Circuit Judges*.
Per Curiam:[*]

Thomson Reuters (Tax & Accounting), Inc., terminated Lisa Holmes for violating its nepotism policy. Alleging her termination was due to her age and sex, Holmes sued Thomson Reuters under Title VII of the Civil Rights Act ("Title VII") and the Age Discrimination in Employment Act

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-10133

("ADEA"). The district court entered summary judgment for Thomson Reuters. Finding no error, we AFFIRM.

## I.

Lisa Holmes worked in Thomson Reuters's tax and accounting division as Senior Director. Holmes's sister, Michele, was in a long-term, close relationship with Dena Lambert for many years.[1]

Dena was twice considered for a position with Thomson Reuters under Holmes's supervisory authority.[2] Dena first applied for a customer service position after Holmes informed Michele of the opening. Though she did not make the offer herself, Lisa Holmes was in the relevant chain of command and approved the offer. Due to a hiring freeze, Dena was not extended the offer.

A year later, Dena was again considered by Thomson Reuters for a similar position. In requesting final approval to offer Dena the job, Holmes sent an email signed by Rick Rocco, a senior manager, to higher-ups stating that Dena Lambert-Holmes "is not related to Lisa Holmes." Dena was offered the job, which she accepted.

Dena was considered for a promotion less than a year later. At a meeting where the candidates for the promotion were being considered, Holmes "appeared to be strongly advocating for the hire of Dena to the point of disparaging the other candidates." Holmes's colleagues at the meeting "felt uncomfortable." One of those colleagues, upon learning of Michele and Dena's relationship, consulted with Human Resources. As a result,

---

[1] For the sake of clarity, Michele and Dena will be referred to by their first names.

[2] Dena, at that point, used the last name "Lambert-Holmes." Thomson Reuters introduced evidence that Dena legally changed her name to "Dena Lambert-Holmes" well before applying for the jobs to have "the same name as other members of [her] family."

No. 22-10133

Thomson Reuters began "an investigation into whether an undisclosed conflict-of-interest existed" between Holmes and Dena.

Thomson Reuters policy requires employees to:

> identify potential conflicts when they arise and to *notify in writing* an appropriate manager, Human Resources representative or a lawyer who supports your business if you are unsure whether a relationship or transaction poses a conflict before engaging in the conduct *or* as soon as you learn of the potential conflict. An appropriate manager or Human Resources representative will be able to pre-clear or resolve certain conflicts, or will be able to contact someone else at Thomson Reuters who can.

(emphasis added). The policy states specifically that a conflict exists when "[s]omeone with a close relationship with you is in a direct reporting relationship with you, or you have the ability to supervise, review or influence the job evaluation, hiring, pay or benefits of someone with a close relationship with you." The policy defines a "close relationship" as "members of your immediate family or household," "a personal relationship between a supervisor and a subordinate that could influence objectivity," or a "relationship with a partner, cousin, more distant relative or friend [that] could influence your objectivity."

Robert Goodall, a member of the compliance team at Thomson Reuters, led the investigation into Holmes. He determined that Holmes and Dena had a close relationship as defined by the policy and that Holmes had neglected to "notify in writing" a relevant member of the Thomson Reuters team.

Thomson Reuters terminated Holmes based solely on the result of Goodall's investigation. Holmes contends that the official reason was "pretextual and discriminatory and used to target [her] for termination based

3

on her age and gender." Additionally, when Holmes filed for unemployment benefits, Thomson Reuters "objected to her benefits based upon alleged misconduct." This, she contends, "was in retaliation for her complaints of discriminatory treatment and to conceal their discriminatory animus."

Holmes filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter the same day. Holmes then sued Thomson Reuters, asserting discrimination and retaliation claims under Title VII and the ADEA.[3] After discovery and a hearing, the district court judge entered summary judgment for Thomson Reuters. This appeal followed.

## II.

This court reviews a district court's grant of summary judgment *de novo*, applying the same standard on appeal as did the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court "construe[s] all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

## A.

Thomson Reuters does not dispute that Holmes made a *prima facie* showing of discrimination under both Title VII and the ADEA. Furthermore, Thomson Reuters's non-discriminatory justification, that

---

[3] Holmes filed her complaint in the Southern District of New York, but her case was transferred to the Northern District of Texas. She voluntarily dismissed her New York state law claims.

Holmes was terminated for violation of company policies, is legitimate.[4] *See, e.g.*, *Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020). Thus, the only issue is whether Holmes demonstrated that Thomson Reuters's justification is pretextual. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010) (internal quotation marks omitted).

Holmes argues that Thomson Reuters's investigation "was so lacking in reliability" that it had to be pretext for the company's desire to implement "cultural change," *i.e.*, replace older women like Holmes with younger men. Specifically, she contends "no reasonable employer would have accepted [the investigation's] findings" that she violated the company's nepotism policy because Goodall failed to contact two former employees to whom Holmes says she disclosed her relationship.

Holmes's argument for pretext is insufficient for two reasons. First, even if Goodall interviewed those two former employees and found that Holmes verbally disclosed her conflict to them, Goodall did not uncover, nor did Holmes produce, any evidence that she disclosed her conflict *in writing* to them, or any other appropriate authority, as required by the policy. Indeed, at the district court's summary judgment hearing, Holmes's counsel conceded that "notification to the company has to be in writing" and that Holmes had no "evidence of a written notification." Nor did Goodall find, or Holmes produce, any evidence that an appropriate official at Thomson Reuters "pre-clear[ed] or resolve[d]" the conflict. In other words, even if

---

[4] Holmes claims that termination was a disproportionate reaction to the alleged violation, especially given her long and well-reviewed tenure at Thomson Reuters prior to the investigation. Disproportionate or not, Holmes cannot and does not ultimately dispute that an employer may terminate an employee who violates the company's nepotism policy.

Goodall had conducted the investigation to Holmes's specifications, he would have still concluded that Holmes violated the company policy.

Second, regardless of whether the conclusion of the investigation was correct, Holmes has not produced any evidence that the "real reason" for her termination was discrimination and not her violation of the nepotism policy. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Holmes only argued that the investigation arrived at the wrong result. That is not enough to prove pretext. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a [discriminatory] motivation behind an adverse employment decision.").

Beyond disagreeing with the investigation's result, Holmes only offers speculation that her termination was motivated by "cultural change," which she believes is code for age and sex-based discrimination. The only times "cultural change" was mentioned in this case, however, was in an email, in passing, and a deposition of one of the newly hired managers who stated that "one of the key objectives within this department was a change of culture, and that culture needed to be one of respect and value based driven decisionmaking and value based interactions with each other," not "one of gossip and hallway conversations." It is speculative to conclude that (1) the hidden meaning behind this statement is that the company prefers younger men as managers, and (2) this preference, not the investigation's findings, was the true motivation behind Holmes's termination. "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (internal quotation marks and citation omitted).

No. 22-10133

Holmes has not demonstrated that the investigation was unworthy of credence and has not provided any evidence beyond speculation that the reason Thomson Reuters terminated her was pretextual. Holmes, thus, fails to create a material fact issue on pretext.

### B.

Employers have an obligation to report to the Texas Workforce Commission "any facts known" that may "adversely affect the claimant's right to [unemployment] benefits." TEX. LAB. CODE § 208.004. Upon its receipt of a notice under the statute, Thomson Reuters had an obligation to report its reason for discharge. Thus, we agree with the district court that "merely presenting to the Texas Workforce Commission its position as to why the Plaintiff was discharged . . . cannot constitute retaliation as a matter of law because they are obligated to have reported the reason for the discharge." We, therefore, reject Holmes's retaliation claim.

### III.

For the foregoing reasons, the district court's order is AFFIRMED.