# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-20227

---

Annie Laura Ray,

Plaintiff—Appellant,

*versus*

Columbia Brazoria Independent School District;
Steven Galloway; Jonathan Champagne; Linda Huebner;
Wendy Monical; Becky Danford; Matt Dambrosky; Ray
Sisson; James Broussard; Jackie Gotcher,

Defendants—Appellees.

United States Court of Appeals
Fifth Circuit
**FILED**
April 28, 2025
Lyle W. Cayce
Clerk

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-145

---

Before Stewart, Clement, and Willett, *Circuit Judges*.
Edith Brown Clement, *Circuit Judge*:[*]

Plaintiff-Appellant Annie Ray worked as a teacher for Defendant-Appellee Columbia Brazoria Independent School District (CBISD) in Texas. In March 2020, CBISD ceased in-person classes at all schools in response to the COVID-19 pandemic. CBISD subsequently reopened

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

schools for in-person instruction for the 2020-2021 school year, but Ray was unwilling to return to campus because of concerns about her susceptibility to COVID-19 due to underlying health conditions. Ray did not return to campus for the remainder of the school year, and in May 2021, CBISD decided to not renew her employment contract. Ray sued CBISD, its superintendent, and members of the board of trustees for retaliation and discrimination based on her disability, race, sex, and age. The district court granted summary judgment to CBISD, and Ray appealed. We AFFIRM.

## I.

## A.

Ray is a Black woman who was sixty-three years old when CBISD chose to not renew her contract. She began working as a speech and communications teacher for CBISD about twenty years earlier. In March 2020, CBISD closed all school campuses because of the COVID-19 pandemic and continued instruction virtually for the remainder of the school year. Then, in the summer of 2020, the Texas Education Agency announced that it was safe for students, teachers, and staff to return to school campuses for in-person instruction for the 2020-2021 school year. Aliyya Swaby, *Texas students will return to school campuses this fall, Gov. Greg Abbott tells lawmakers*, THE TEX. TRIB. (June 18, 2020), https://www.texastribune.org/2020/06/18/texas-schools-reopening-fall/). Based on this guidance, CBISD allowed parents to decide whether their children would receive in-person or remote instruction. However, CBISD required teachers to report to campus.

Ray was concerned about returning to in-person instruction, due to her underlying diagnoses of hypertension, diabetes, macular degeneration, retinopathy, and more. Ray developed symptoms of anxiety and panic at the thought of being exposed to COVID-19 at work.

No. 24-20227

On August 10, 2020, Ray attended an on-campus training for teachers and staff, ahead of the first day of class scheduled for August 25. At the training, Ray expressed her concerns about COVID-19 to her supervisor, principal Scott Moody. Ray asked Moody if she could "be separated from all the students" or if she "could work from home."[1] Moody responded that Ray needed to work with students in the classroom but that the school was taking preventative safety measures like providing hand sanitizer, disinfectant spray, gloves, masks, and more. Neither Ray nor Moody discussed other accommodation options besides working from home or having no students in Ray's classroom.

During the summer of 2020, Ray worked with CBISD's benefits coordinator, Renee Bullard, to obtain long-term disability insurance benefits through American Fidelity Assurance Company. On August 13, Ray returned to school to give Bullard the medical documentation that the insurer had requested. Ray claims that along with her insurance paperwork, she also brought a letter addressed to human resources stating that she was applying for "long term disability," which was separate from her insurance application. The letter stated she was applying for disability based on "anxiety due to potential COVID-19 exposure in the school setting." The letter also reiterated her request for an accommodation "which would allow [her] to teach remotely from home where [she] do[es] not come in contact with the student body or other teachers." Ray testified that she tried to give this letter to the director of human resources, but Bullard gave the letter back to Ray, telling her, "We don't need that." Bullard, however, testified that she was never given the letter.

_____

[1] Ray also testified that she asked Moody if there were any positions with "less contact with students," but she did not suggest any positions to him.

3

Ray did not return to school when classes resumed in August. Instead, on September 16, Ray submitted a request for ten sick days to treat her macular degeneration. CBISD superintendent Steven Galloway denied Ray's request for lack of supporting paperwork. On September 29, Ray sent CBISD a doctor's note requesting ten days off "due to severe anxiety with panic attacks." The next day, Bullard called Ray to discuss the request. Bullard explained to Ray that she had exhausted her leave as of September 26 but that CBISD would nevertheless grant her request for an extra ten days of leave. Bullard communicated that Ray was expected to return to work on October 14 and that she would need a release from her physician to return to work. Bullard memorialized the call and the information conveyed in a letter to Ray.

Ray did not return to work on October 14, and she never submitted documentation that she was cleared to return to work, as requested. Ray did not submit any additional requests for leave or medical documentation demonstrating a need for further leave.

On March 23, 2021, the CBISD board of trustees recommended not renewing Ray's employment. When Ray asked for the reason for the recommendation, CBISD explained that she had exhausted all available leave and had not reported to work. Ray's nonrenewal coincided with a larger reduction in force at CBISD due to budget shortcomings after the pandemic. Ray appealed her nonrenewal, and the board of trustees held a hearing on May 18. During the hearing, Ray explained that she thought she was on long-term disability leave because of the paperwork she submitted for her disability insurance application. The board asked Ray if she would be willing to teach in another position for the upcoming year, but Ray responded, "[T]he only thing I know to teach is communication."

After the hearing, the board voted in favor of nonrenewal, and Galloway called Ray the next day to deliver the news. Galloway told Ray that she could apply for other available positions with CBISD, and Ray told them she would let them know. Ray never followed up or applied to any other position.

**B.**

Ray sued CBISD, Galloway, and members of the board of trustees in January 2023 for retaliation and discrimination based on disability, race, sex, and age, in violation of Title VI, 42 U.S.C. § 2000d *et seq.*; Title VII, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34. Ray later amended her complaint to add additional allegations. The defendants moved to dismiss the claims against the board members, and the district court granted the motion in this respect.

Both CBISD and Ray then moved for summary judgment. The district court granted CBISD's motion and denied Ray's, dismissing all claims against CBISD. The district court interpreted Ray's ADA claim as a failure-to-accommodate claim and held that (1) teaching remotely was not reasonable because in-person attendance was an essential function of Ray's role, (2) Ray failed to show that alternative positions with less student contact were available, and (3) Ray failed to communicate her disability and limitations in such a way that obligated CBISD to move her to a more isolated part of the school. With respect to Ray's race, sex, and age discrimination claims, as well as her retaliation claim, the district court held that she could not make a prima facie case or show pretext. Ray timely appealed the grant of summary judgment to CBISD and the denial of her motion for summary judgment.

## II.

A grant of summary judgment is reviewed de novo. *Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence," which "shift[s] to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam). "The nonmovant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

## III.

Ray's first claim is for disability discrimination in violation of the ADA. The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A). To prevail in a failure-to-accommodate claim, a plaintiff must prove the following statutory elements: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off.*

*of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quotations omitted). The parties dispute whether Ray met any of these elements.

Ray argued that CBISD failed to accommodate her in three separate ways: (1) denying her request to teach remotely, (2) failing to transfer her to a different position, and (3) neglecting to move her to a more isolated part of the school. We consider each argument in turn.

## A.

Ray alleged that CBISD discriminated against her by not allowing her to teach remotely like she requested. Noting that the ADA does not relieve employees from performing essential functions of their jobs, the district court determined that in-person attendance was essential to Ray's role as a teacher. Indeed, this court has recognized that "there is general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs," especially when "the position is interactive." *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 793 (5th Cir. 2017). Ray's job description listed "classroom management" as one of her "major responsibilities and duties."

On appeal, Ray argues that the district court improperly relied on *Credeur* because it was decided before the COVID-19 pandemic. But Ray fails to provide any post-pandemic caselaw indicating that in-person attendance is not an essential part of being a teacher, and the district court cited a number of cases to the contrary. *See, e.g.*, *Sarkisian v. Austin Preparatory Sch.*, 646 F. Supp. 3d 174, 185 (D. Mass. 2022), *aff'd*, 85 F.4th 670 (1st Cir. 2023) ("Accordingly, by being unable to attend school in person, Mrs. Der Sarkisian was not able to . . . fulfill an essential function of her position."); *Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1192 (D. Kan. 2020), *aff'd*, 851 Fed. App'x 828 (10th Cir. 2021) (listing essential functions of teacher's job as "teaching and

supervising students"). We see no reason to depart from *Credeur*'s guidance that "an employee's unsupported testimony that she could perform her job functions from home does not create a genuine dispute of fact." 860 F.3d at 793 (cleaned up). Here, Ray has nothing more than her unsupported testimony that she could do her job remotely.

Ray reiterates her argument that in-person attendance was not essential because CBISD allowed teachers to work remotely at the start of the pandemic. But the district court already addressed this argument. It quoted EEOC guidance on point:

> The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship.

*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. EEOC, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws# (last updated May 15, 2023). Thus, CBISD's prior allowance of telework does not create a genuine dispute of material fact as to whether in-person instruction was an essential function of Ray's position as a teacher. *See Jordan v. Sch. Bd. of Norfolk*, No. 22-167, 2023 WL 5807844, at *11 (E.D. Va. Sept. 7, 2023) ("[O]nce [defendant-employer] required students and employees to return for in-person instruction, [plaintiff-principal] was required to resume her job's essential functions as they were in the pre-COVID era." (quotations omitted)).

## B.

Ray's next failure-to-accommodate argument is that CBISD should have offered her a job with less student contact, such as a position on the Disciplinary Alternative Education Program (DAEP), the in-school suspension (ISS) program, or the home visit program for students unable to attend school, known as "Homebound." These programs generally have fewer students in them than Ray's usual class.

The district court noted that although reassignment to a different position can be a reasonable accommodation, "the plaintiff bears the burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) (cleaned up). Ray failed to present any evidence that positions with DAEP, ISS, or Homebound were available, according to the district court. Principal Moody testified that the positions with DAEP, ISS, and Homebound had already been filled by the time Ray asked for an accommodation.

On appeal, Ray argues that the school year had not yet begun when she asked Moody for an accommodation, meaning CBISD could have substituted Ray in place of one of the teachers slated for DAEP, ISS, or Homebound. But a filled position is clearly not an available one, and "[t]he ADA does not require an employer to . . . reassign existing employees to perform [the disabled employee's job]." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999). There is no genuine dispute of fact on this point.

## C.

Ray's final argument on the failure-to-accommodate front is that CBISD should have relocated her class to a more isolated part of campus. Superintendent Galloway testified that G Building had fewer classrooms than other areas of campus and that there was a portable building with two

classrooms on campus known as the "Outback." Ray never requested a relocation to one of these areas, but she argues that CBISD should have offered her the option to relocate as part of the interactive process required by the ADA. "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. pt. 1630, App. § 1630.9.

In response to Ray's argument about the interactive process, the district court cited caselaw to the effect that "[w]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). Finding that Ray only ever asked to teach remotely or with no students in her classroom, the district court determined that Ray failed to carry her burden of identifying her limitations and suggesting the reasonable accommodation of relocation to another area of campus.

Ray contends on appeal that her initial request to work remotely triggered CBISD's obligation to engage in the interactive process and propose her relocation to G Building or the Outback. But even ignoring Ray's "initial burden . . . to specifically identify the disability and resulting limitations," *Taylor*, 93 F.3d at 165, and assuming the interactive process was afoot, "courts have held that an employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer." *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) (quotations omitted). And here,

the undisputed evidence shows that CBISD (1) granted Ray's request for ten additional sick days after her initial accommodation request; (2) informed her that she had exhausted all available leave as of September 26, 2020; (3) communicated that she was expected to return to work on October 14, 2020; and (4) requested a letter from her physician clearing her to return to work. Bullard's phone call and letter should have disabused Ray of any notion that she was on disability leave after October 14. Any breakdown in the interactive process, then, is traceable to Ray, not CBISD. *See Hoskins v. GE Aviation*, 803 F. App'x 740, 745 (5th Cir. 2020) (per curiam) ("If an employee fails to provide requested documentation to substantiate a claim of disability and thereby causes a breakdown in the interactive process, the employer has not violated the ADA."). Ray has failed to raise a genuine dispute as to CBISD's participation (or lack thereof) in the interactive process.

For these reasons, we find that Ray has failed to show the required elements for a claim of disability discrimination.

## IV.

Ray's next group of claims is for race, sex, and age discrimination in violation of Title VI, Title VII, and the ADEA. Federal employment discrimination claims based on circumstantial evidence are subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).[2]

---

[2] Ray contends that she has direct evidence of discrimination in the form of CBISD's admission that it rejected her proposal to work from home because all teachers were required to return to campus. "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). CBISD's rationale for not accepting Ray's proposed accommodation is plainly not direct evidence of discrimination. Ray's evidence is circumstantial.

Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* Ray can establish a prima facie case by showing that she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Id.*

Ray alleged that CBISD discriminated against her by not transferring her to a position with DAEP, ISS, or Homebound. The district court determined that Ray failed to establish that her lack of transfer was an "adverse employment action" because she never applied for or even asked to transfer to one of those programs. Ray does not challenge this finding on appeal, and "[a] party forfeits an argument . . . by failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Nevertheless, we agree with the district court that Ray cannot have suffered an adverse employment action by not being transferred to a position she did not request. *See Thomas v. Tregre*, 913 F.3d 458, 463–64 (5th Cir. 2019) (finding no adverse employment action when plaintiff did not apply for position he was allegedly denied).

Next, Ray alleged another instance of discrimination in the form of CBISD's decision not to renew her contract. The district court found that even if Ray established a prima case on this ground, she did not present evidence of pretext. If a plaintiff establishes a prime facie case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. "Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "The plaintiff then bears the ultimate burden of persuading the trier of fact

by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.*

CBISD articulated a nondiscriminatory reason for not renewing Ray's contract: CBISD told Ray she was recommended for nonrenewal because she had exhausted all available leave and had not reported to work (i.e., for excessive absences). Ray therefore had the burden of proving this reason pretextual.

Ray argues that CBISD's reason is pretextual because her nonrenewal violated the school district's policy on leave. CBISD's policy states, "Eligible employees are entitled to continue their healthcare benefits under the same terms and conditions as when they were on the job and are entitled to return to their previous job or an equivalent job at the end of their leave." The policy on temporary disability provides, "The contract or employment of the educator may not be terminated while the educator is on a leave of absence for temporary disability." While Ray may have believed she was on disability leave (and therefore subject to these policies), CBISD told her that her leave had expired and that she was expected to return to work on October 14, 2020. Thus, Ray has no evidence that CBISD violated its policies when it decided to not renew her contract. Ray has failed to create a genuine dispute as to pretext.

## V.

Finally, Ray brought a retaliation claim against CBISD for her nonrenewal. "To establish a prima facie case of unlawful retaliation under the ADA, the plaintiff must show that: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and

(3) there is a causal connection between the protected activity and the adverse action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020).

Ray alleged that she engaged in the following protected activities: (1) requesting an accommodation on August 10, 2020, (2) appealing her recommendation of nonrenewal, and (3) filing an EEOC charge. But Ray has no evidence of a causal connection between her protected activities and her nonrenewal. While "close timing between an employee's protected activity and an adverse action against him" may satisfy the causal connection, the temporal proximity must be "very close." *Feist*, 730 F.3d at 454 (cleaned up). Typically, "a five month lapse is not close enough without other evidence of retaliation." *Id.* Here, Ray requested an accommodation on August 10, 2020, but she was recommended for nonrenewal on March 23, 2021, over seven months later. Ray does not present any additional evidence of causation on appeal.

As for the other two protected activities, the appeal and EEOC charge, both of those occurred *after* Ray was recommended for nonrenewal. An adverse action cannot be caused by something that had not yet happened. *See Castlino v. Thomas*, 141 F. App'x 255, 257 (5th Cir. 2005) (per curiam) (finding termination could not be retaliation for EEOC charge when termination preceded charge).

Therefore, we find that Ray has not established a prima facie case of retaliation.

## VI.

For these reasons, we AFFIRM the district court's grant of summary judgment to CBISD and Galloway.

14