# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00902-CV

**Texas Alcoholic Beverage Commission, Appellant**

**v.**

**Earl Pearson, Appellee**

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-001703, THE HONORABLE LAURIE EISERLOH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Alcoholic Beverage Commission (TABC) appeals from the trial court's denial of its plea to the jurisdiction and motion for summary judgment in this lawsuit Earl Pearson filed against TABC alleging unlawful employment discrimination. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a) (authorizing interlocutory appeal from denial of governmental unit's plea to jurisdiction). For the following reasons, we affirm the trial court's order denying TABC's plea and motion.

## BACKGROUND

In his live petition, Pearson alleged that he is African-American; began working for TABC in 2009; and had advanced to the position of Chief of Enforcement when he was notified on July 5, 2017, that his employment was being terminated. He alleged that he "did not have any performance or disciplinary issues" and that TABC informed him merely that the

agency "was being taken in a new direction and that he was not a part of that direction." He learned after he was fired that a white male had replaced him.

Pearson asserted a claim against TABC for discrimination based on race, alleging violation of Chapter 21 of the Texas Labor Code. *See* Tex. Lab. Code § 21.051 ("Discrimination by Employer"); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012) (Chapter 21 is a "comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964, that provides the framework for employment discrimination claims in Texas."). Pearson claimed that he is a member of a protected class and received unfavorable treatment, including his termination, because of his race; that there is no legitimate, nondiscriminatory reason for TABC's actions, and that any such reason is mere pretext; that his race was a determining or motivating factor in TABC's decision to terminate him; and that he suffered damages as a direct result of TABC's unlawful actions. *See Beebe v. City of San Antonio ex rel. CPS Energy*, 673 S.W.3d 691, 697 (Tex. App.—San Antonio 2023, pet. denied) (outlining elements of discrimination claim and citing *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).

TABC filed a combined plea to the jurisdiction and motion for summary judgment, arguing that its governmental immunity was not waived because Pearson had not established a prima facie case for racial discrimination or raised a fact issue about whether TABC's legitimate, nondiscriminatory reason for terminating his employment was mere pretext. TABC attached several exhibits to its plea and motion, including the termination letter and inter-office memo it issued to Pearson terminating his employment and media articles from the spring and summer of 2017. TABC asserted that Pearson's employment was terminated during a period when "several high-ranking officials at TABC resigned or were terminated in the wake of

2

increased scrutiny of TABC after public criticism of TABC on multiple issues" and that the change in these leadership positions "had nothing to do with race." TABC asserted that the agency's new leadership was taking the agency in a "new direction" and that Pearson did not exhibit the leadership and initiative expected from the new leadership.[1] Pearson filed a response to the motion, supported solely by his own affidavit. TABC filed a motion to strike Pearson's affidavit, lodging several objections to it including hearsay and lack of personal knowledge. At a hearing on TABC's motion, the trial court overruled TABC's evidentiary objections and thereafter denied the motion, and TABC perfected this interlocutory appeal.

## DISCUSSION

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (plurality op.). Typically, the plea to the jurisdiction challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (*Garcia II*). When, as in this case, the plea to the jurisdiction challenges the existence of jurisdictional facts, then, like the trial court, we "consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.'" *Id.* (quoting *Miranda*, 133 S.W.3d at 226). We review the trial court's denial of a plea to the

---

[1] TABC's plea and motion cited its termination letter given to Pearson, which does not provide any examples of said lack of leadership or initiative or provide any reason for his termination.

jurisdiction and of a motion for summary judgment de novo. *City of Houston v. Gomez*, 716 S.W.3d 161, 164 (Tex. 2025).

TABC, being an agency of the State, enjoys immunity from suit unless the legislature has waived its immunity. *See University of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019). Immunity may be asserted through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018). The Texas Commission on Human Rights Act (TCHRA), comprising Chapter 21 of the Labor Code, provides a limited waiver of immunity from suit "only when the Plaintiff actually states a claim for conduct that would violate the TCHRA." *Garcia II*, 372 S.W.3d at 637; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 660 (Tex. 2008) (*Garcia I*) ("[A]ll the courts of appeals that have considered it have concluded that the TCHRA clearly and unambiguously waives immunity, and we agree."); Tex. Lab. Code § 21.002(8)(d) (defining employer to include state agency or instrumentality).

Because TABC's jurisdictional plea challenged the existence of jurisdictional facts with supporting evidence, the standard of review mirrors that of a traditional summary judgment: "[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Clark*, 544 S.W.3d at 771 (quoting *Miranda*, 133 S.W.3d at 225–26)).

Under the TCHRA, "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner

4

against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ." Tex. Lab. Code § 21.051(1). "[A]n unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice . . . ." *Id.* § 21.125(a). The Texas Supreme Court has explained "that 'a motivating factor' is the correct standard for the plaintiff in all TCHRA unlawful employment practice claims." *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). This language states exactly "what a complainant must show in order to prevail in a lawsuit." *Id.*

"Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases." *Garcia II*, 372 S.W.3d at 634. The first method "involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id.* "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). The second method is with circumstantial evidence, which triggers the three-part *McDonnell-Douglas* burden-shifting framework. *See Clark*, 544 S.W.3d at 782; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

On appeal, TABC first argues that the trial court abused its discretion in overruling its evidentiary objections to Pearson's affidavit. TABC objected to Pearson's affidavit, arguing that the entirety of its substantive content was hearsay, that the statements therein were not based on personal knowledge, and that one statement therein constituted an inadmissible legal conclusion. TABC argues that without the affidavit, Pearson had no admissible evidence creating a fact issue on the ultimate issue of discriminatory intent and that the trial court erred in denying its plea to the jurisdiction. We therefore first consider whether

5

the trial court abused its discretion in overruling TABC's evidentiary objections. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995) (noting abuse-of-discretion standard for reviewing court's decision to admit evidence).

In its entirety, Pearson's affidavit reads,

1. Soon after I was fired in July, 2017 I had a phone conversation with Robert Saenz, Executive Chief of the TABC and my supervisor at TABC prior to my termination. He informed me that my termination was a mistake and that they had actually meant to fire my African-American co-worker, Dexter Jones. He told me that a Texas House Representative, Sarah Davis, had issues with Dexter Jones due to disputes between the agency and certain retailers and wanted to see him terminated. According to Robert Saenz there was a mistake and instead of firing Dexter the agency fired me and had, "fired the wrong black guy." Robert encouraged me to contact Don Rupp, Director of Human Rexources [sic], for more information.

2. I spoke with Don Rupp and he told me specifically that my performance had nothing to do with my termination and that he was bothered by it. He also stated that he did not understand why I had been terminated. I told Don that the Texas Workforce Commission sent me a letter saying that TABC had cited my performance as the reason for termination. Don Rupp insisted that was not true and that he would work to correct that with TWC. I told Don Rupp what Robert Saenz had told me about "the wrong black guy" being fired and he assured me that there was no legitimate reaspon [sic] for my termination.

3. After I was terminated, I learned from Robert Saenz that Victor Kuykendoll, a white male, had replaced me as Chief of Enforcement.

After TABC lodged its hearsay objection to Pearson's affidavit, Pearson bore the burden of showing that the testimony is not hearsay or that it fits within an exception to the prohibition on admitting hearsay evidence. *See In re Commitment of Lott*, No. 03-23-00783-CV, 2024 WL 3187663, at *1 (Tex. App.—Austin June 27, 2024, pet. denied) (mem. op.) (citing *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004)). At the hearing on TABC's plea and motion, Pearson asserted that the challenged statements in his affidavit are excluded from the hearsay rule because they are "admission[s] of a party-opponent" or that if

they are hearsay, they are nonetheless admissible because they fall under the exception for "statement[s] against interest."

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). A statement is excluded from the definition of hearsay if it qualifies as an "opposing party's statement."[2] *Id.* R. 801(e)(2). To meet that test, the statement must (1) be offered against an opposing party and (2) meet one of the following conditions:

(A) have been made by the party in an individual or representative capacity;

(B) be one the party manifested that it adopted or believed to be true;

(C) have been made by a person whom the party authorized to make a statement on the subject;

(D) have been made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E) have been made by the party's coconspirator during and in furtherance of the conspiracy.

*See id.*

Saenz's and Rupp's purported statements were made not by Saenz and Rupp in their respective affidavits but, rather, by Pearson in his own affidavit and were offered for the truth of the matters asserted therein; therefore, they are hearsay unless they meet the requirements of the exclusion for an opposing party's statement. *See id.* R. 801(d). Only the subsection (D) condition arguably applies here, requiring the statement to have been (a) made by

---

[2] There are other exclusions from the hearsay rule, but Pearson did not assert any of those. *See* Tex. R. Evid. 801(e)(1) (a declarant-witness's prior statement), (3) (a deponent's statement).

a TABC employee (b) on a matter within that employee's scope of employment (c) while the person was employed by TABC. *See id.* R. 801(e)(2)(E). We conclude that the trial court did not abuse its discretion in determining that each of these requirements was met.

As for Saenz's statements, Pearson averred that "soon after" he was fired, he spoke with Saenz, "Executive Chief of the TABC." Pearson averred that Saenz had been his supervisor at TABC before Pearson was fired. Because Pearson averred that when he spoke with Saenz about the reasons for his firing from TABC, Saenz was serving in the capacity of TABC's Executive Chief, and because Saenz's statements were on a matter within the scope of Saenz's employment, we conclude that the conditions in subsection (D) were met. That is, Saenz's statement in Pearson's affidavit qualifies as a statement of TABC—a party opposed to Pearson—because Saenz made the statement to Pearson while Saenz was employed by TABC, and the matter about which Saenz spoke was within the scope of his employment relationship, given that he served as Pearson's supervisor and that matters involving the hiring and firing of employees under his management would reasonably have been within the scope of his employment. *See Texas Health & Hum. Servs. Comm'n v. Kadia*, 704 S.W.3d 84, 104–05 (Tex. App.—Austin 2024, no pet.) (holding that scope of employment for government-entity employees' supervisors or relevant human-resources personnel can encompass kinds of statements like those made here and that trial court did not abuse its discretion in admitting them under Rule 801(e)(2)(D)). Additionally, Pearson testified in his deposition that Saenz was at the meeting he had with interim Director Swedberg and another employee from the human resources department when Swedberg informed him he had to choose between resigning or being terminated. Pearson further testified that "no reason" was given by Swedberg, except that "the Commissioner" said that he "needed to go." Due to Saenz's position as Executive Chief, his role as Pearson's

8

supervisor, and his presence at the meeting when Pearson first learned he was being terminated, Saenz presumably would have had knowledge of discriminatory employment practices within TABC affecting Pearson, and the trial court did not abuse its discretion in making such reasonable inference. *See id.*

We conclude similarly as to Rupp's statements. Although Pearson does not give as much indication of when the Rupp conversation occurred, from the context of his affidavit it follows that it occurred shortly after the Saenz conversation. Moreover, because Saenz directed Pearson to speak with Rupp, "the Director of Human Re[s]ources," the trial court reasonably could have construed Pearson's affidavit to imply that Rupp was still in such position with TABC when Pearson spoke with him and Rupp made the challenged statements. Such inference is supported by Rupp's offering to "correct" the Workforce Commission's misunderstanding that Pearson's job performance had been an issue. Further, as the Director of Human Resources, Rupp's statements about hiring and firing of employees and about employee-performance issues would have been within the scope of his employment, and the trial court did not abuse its discretion in so inferring. *See id.* We overrule TABC's complaint about the trial court's admission of Pearson's affidavit over TABC's hearsay objection because the challenged statements therein are not hearsay under the exclusion contained in Rule 801(e)(2)(D).[3]

We agree with TABC, however, that Rupp's statement that there was not a "legitimate" reason for Pearson's firing is an inadmissible legal conclusion and that the trial court should have struck that statement. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (statement asserting "nothing more than a legal conclusion" is inadmissible evidence);

---

[3] Because the statements are not hearsay, we need not consider whether the exception to the hearsay rule for statements against interest applies. *See* Tex. R. Evid. 803(24); Tex. R. App. P. 47.1, 47.4.

9

*Marty's Food & Wine, Inc. v. Starbucks Corp.*, No. 05-01-00008-CV, 2002 WL 31410923, at *3 (Tex. App.—Dallas Oct. 28, 2002, no pet.) (op. on reh'g) (not designated for publication) (noting that legal conclusions—such as whether a party's conduct was "reasonable"—contained in affidavits are inadmissible); *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ) (explaining that legal conclusions are statements that "reduce to a legal issue a matter that should be resolved by relying on facts" and "amount to little more than the witness choosing sides on the outcome of the case").  Whether TABC's reasons for terminating Pearson's employment are not "legitimate" and thus violate the TCHRA are ultimate merits determinations for the factfinder, the making of which determinations must rely on the *facts* presented by the evidence rather than the opinion or conclusion of witnesses on that ultimate merits determination.  *See Rizkallah*, 952 S.W.2d at 587.  We sustain that portion of TABC's evidentiary issue.

We next address TABC's contention that the trial court erred in overruling its objection that Saenz's and Rupp's statements were inadmissible because Pearson failed to establish that they were based on each declarant's personal knowledge.  *See* Tex. R. Civ. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); Tex. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) ("An affidavit showing no basis for personal knowledge is legally insufficient.").

An employee's personal knowledge may be established by that person's position with the employer, and a corporate employee is generally presumed to possess personal

10

knowledge of facts that he would learn in the usual course of his employment, absent indications to the contrary, without having to otherwise prove personal knowledge. *See Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 559 S.W.3d 537, 551 (Tex. App.—Austin 2011, no pet.); *see also McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d 659, 663 (Tex. App.—San Antonio 1992, writ denied) (dispensing with requirement that opposing-party's statement demonstrate it is made on personal knowledge when it appears in another person's affidavit). As already noted, the statements made by Saenz and Rupp—specifically about the agency firing the "wrong black guy" and Pearson's performance having "nothing to do with" his termination—regard matters within the scope of their employment with TABC and, based on their respective positions with TABC, each of them is presumed to have personal knowledge of the matters about which they allegedly spoke with Pearson, which are matters they would typically learn about in the usual course of their employment. *See Kadia*, 704 S.W.3d at 104–05; *Fernea*, 559 S.W.3d at 551. We overrule TABC's issue in which it contends that the trial court abused its discretion in overruling its objection to Pearson's affidavit on the purported lack of Saenz's and Rupp's personal knowledge.[4]

As Pearson's affidavit pertains to the disposition of this appeal, we conclude that Saenz's statement that TABC "made a mistake" and "fired the wrong black guy," intending to fire a black person other than Pearson, constitutes direct evidence of discrimination. *See*

---

[4] For the first time on appeal, TABC asserts that Pearson's affidavit is a sham affidavit and thus constitutes no evidence on the ultimate issue of whether race was a factor in TABC's decision to terminate him. However, an objection that an affidavit is a sham affidavit is an alleged defect of form, rather than of substance, for which an appellant must preserve error by objecting to the evidence and obtaining a ruling by the trial court. *See Haffan Props., LLC v. Vista Agency, LLC*, No. 14-21-00708-CV, 2023 WL 3640997, at *3 (Tex. App.—Houston [14th Dist.] May 25, 2023, no pet.) (mem. op.); *Broadnax v. Kroger Tex., L.P.*, No. 05-04-01306-CV, 2005 WL 2031783, at *5 (Tex. App.—Dallas Aug. 24, 2005, no pet.) (mem. op.). TABC has not preserved this alleged error for our review. *See* Tex. R. App. P. 33.1.

*Sandstad*, 309 F.3d at 897; *Garcia II*, 372 S.W.3d at 634. That is, the statement, if believed, proves the fact of discriminatory animus without any inference or presumption. *Sandstad*, 309 F.3d at 897. While TABC cites *Autozone, Inc. v. Reyes* for the proposition that Saenz's comment was a mere "stray remark" that cannot constitute direct evidence of discrimination, the evidence in that case is distinguishable. *See* 272 S.W.3d 588, 593–94 (Tex. 2008). In *Autozone*, the statement at issue—that the corporation was trying to get rid of "the old people"—was made by a store manager of a different store from that at which the plaintiff worked and who was not part of the management team that investigated and made the decision to discharge the plaintiff. *See id.* That manager had no authority over the plaintiff until the company transferred the plaintiff to that manager's store *after* the unrelated, alleged sexual-harassment incidents at issue had occurred and had prompted the company's investigation into whether the plaintiff had violated the company's sexual-harassment policies. *See id.* In *Autozone*, the supreme court determined that because there was no evidence that the store manager had been involved in, had any leverage over, or even knew or was in a position to know whether the plaintiff's age was a motivating factor for his discharge, his comment about getting rid of "the old people" was a mere stray remark rather than direct evidence of prohibited discrimination. *See id.* at 593.

In contrast, here, as already discussed, the evidence shows that Saenz was an executive at TABC, Pearson's direct supervisor before he was fired, and was present when Pearson was told he was being fired, and the reasonable inference therefrom is that Saenz would have known or been in a position to know the motivating factors for Pearson's termination. Viewing the evidence in the light most favorable to Pearson and drawing all reasonable inferences in his favor, as we must, *see Gomez*, 716 S.W.3d at 164, we conclude that Pearson established a genuine issue of material fact as to the ultimate jurisdictional issue in this case:

12

whether race was a motivating factor in TABC's decision to terminate him.[5]  *See Toennies*, 47 S.W.3d at 480.  Accordingly, the trial court did not err in denying TABC's plea to the jurisdiction and motion for summary judgment.

## CONCLUSION

Having determined that the trial court did not abuse its discretion in admitting the majority of Pearson's affidavit over TABC's evidentiary objections and that Pearson's direct evidence created a genuine issue of material fact about whether race was a motivating factor in TABC's decision to terminate his employment, we affirm the trial court's order denying TABC's plea to the jurisdiction and motion for summary judgment.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Affirmed

Filed:  March 4, 2026

---

[5] TABC cites an excerpt from Pearson's deposition, in which Pearson testified that he spoke with Saenz immediately after he was terminated, while Saenz drove him home, and Saenz then told him that he did not know why Pearson had been terminated.  To the extent that such testimony conflicts with Pearson's affidavit, we must resolve such conflict in Pearson's favor at this juncture, as resolution of fact issues is a matter for the factfinder.  *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

13